UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JERZELLE M. THOMAS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 07-1177** |
| **SHRM CATERING SERVICES, INC., ET AL.** | **SECTION B(5)** |

## ORDER AND REASONS

Before the Court are Defendant SHRM Catering Services, Inc.'s ("SHRM") Motion for Summary Judgment and Defendant Danos and Curole Marine Contractors, LLC's ("D&C") Motion for Summary Judgment. (Rec. Docs. 117, 121). After review of the pleadings and applicable law, and for the reasons that follow,

**IT IS ORDERED** that Defendant SHRM's Motion for Summary Judgment (Rec. Doc. 117) is **DENIED in part and GRANTED in part**. The motion is **DENIED** with respect to SHRM's duty to provide a reasonably safe place to work and **GRANTED** with respect to SHRM's duty to provide prompt and adequate medical care.

**IT IS FURTHER ORDERED** that Defendant D & C's Motion for Summary Judgment (Rec. Doc. 121) is **DENIED.**

## BACKGROUND

Decedent Samuel Thomas was injured in the course and scope of his employment as a Jones Act seaman on or about April 18, 2005. At the time, Thomas was employed as a steward/cook aboard the M/V Dixie Patriot by Defendant SHRM (d/b/a Eurest Support Services),

1

which provided cooking and cleaning services aboard the vessel. The M/V Dixie Patriot was operated by Defendant D&C and owned by Power Marine Investment, LLC. Thomas slipped and fell while descending the internal stairway between 2-deck and 1-deck, injuring his leg and right ankle. There were no witnesses to the accident. Decedent completed an Accident Investigation Report and contacted the M/V's captain, Lanny Malcombe, who inspected the stairway. Decedent's foot swelled and he was transported to shore for medical treatment. Decedent was diagnosed with a heel fracture by Dr. Gregory Gidman, and Dr. Gidman determined surgery was not necessary at that time. About three weeks after the accident, Decedent began seeing a physician he selected, Dr. Waybrun Hebert Eventually, Dr. Hebert performed a fusion surgery on Decedent Thomas's foot. After the surgery, Decedent developed a post-surgical pin infection. Although the infection was treated with antibiotics, Thomas's condition worsened and he passed away on December 19, 2005. The coroner listed the cause of death as cardia arrhythmia, sepsis, infection of the foot, and diabetes. Plaintiff alleges that Decedent's right heel became infected during the surgery. In September 2006, Mr. Thomas's widow, Jerzelle Thomas, filed this lawsuit against Defendants D&C, SHRM, and Power Marine Investments, LLC, the owner of the vessel at the time of injury, for damages arising out of Thomas's death.

SHRM contends that it did not breach a duty to Plaintiff to

provide a seaworthy vessel because it did not own or charter the vessel and was not responsible for maintaining the area where Plaintiff fell. Furthermore, SHRM argues that Decedent, who did not report to SHRM that the stairs were dangerous after his fall, was the highest-ranking SHRM employee aboard the M/V Dixie Patriot and thus was responsible for reporting the hazardous condition.

SHRM further argues that it fulfilled its duty to Plaintiff to provide prompt and adequate medical care by sending Decedent to Dr. Gidman, a board certified orthopedic surgeon, the same day Decedent fell. SHRM asserts that there is no evidence that Dr. Gidman was negligent in his treatment and that all negligent treatment claims are directed at the actions of Plaintiff's chosen physician, Dr. Waybrun Hebert. SHRM argues that it is responsible only for the acts of the doctor it selected, not for the negligent acts of the doctor Plaintiff selected. Additionally, SHRM alleges that Decedent failed to follow doctor's orders, specifically orders to refrain from walking on the injured foot, and that walking on the injured foot caused the infection. Finally, SHRM argues that even if Dr. Gidman were an inappropriate doctor, Plaintiff cannot show that negligence was the proximate cause of decedent's death because Decedent's own physician stated that the infection "was more likely than not caused by [Decedent] walking on the surgical hardware after his surgery." (See Deposition of Dr. Hebert at 60-61, Rec. Doc. 117).

3

D&C admits that, pursuant to its operating agreement with the vessel owners, it was responsible for maintaining the vessel, including the maintenance and cleaning of the stairways. (Rec. Doc. 121-2 at 2 and Ex. D). D&C contends that the vessel was seaworthy and that, according to the Captain's Relief Notes of March 15, 2005, non-skid tape and non-skid paint was applied to the interior stairs.[1] Further, D&C presents the testimony of Captain Malcombe that there were no foreign substances or water on the stairs. D&C argues that Plaintiff has neither presented evidence of nor alleged a specific unseaworthy or dangerous condition or instance of negligence that caused or contributed to Decedent's injury. D&C further argues that it is not liable for the permanent structural components of the vessel.

Plaintiff argues that SHRM breached its duty to provide a safe place to work through its failure to correct and/or warn of an allegedly dangerous stairway. Plaintiff asserts that SHRM had a duty to inspect the vessel for hazards. Plaintiff also argues that SHRM is responsible for all results that "naturally and proximately flow from the shipboard accident" and that this duty applies regardless of who treats the seaman. Hence, Plaintiff argues, SHRM remained responsible for Decedent's condition while in the care of Dr. Herbert and thus SHRM's duty to provide medical care was not

---

[1] See Daniel Viets Deposition at 94-95, 46-48. (Rec. Doc. 121, Ex. J) (confirming that vessel owner, Power Marine, obtained possession of the business records of D&C). See also Preliminary Safety Analysis of Jack Barnridge dated February 14, 2009. (Rec. Doc. 121, Ex. K).

wholly satisfied by sending Decedent to Dr. Gidman.[2]

Plaintiff contends that the stairway was dangerous, specifically alleging that it lacked nonskid covering and proper handrails and was improperly constructed using nonuniform steps and tread. Plaintiff argues that D&C is liable for both unseaworthiness and negligence because it failed to correct and/or warn of the allegedly dangerous stairway. Plaintiff offers the deposition of seaman James Carter, who was working aboard the vessel at the time of Decedent's accident, and the Expert Reports of Captain John C. Manders, dated May 22, 2008 and January 9, 2009, in support. Seaman James Carter testified that there was no nonskid surface on the stairs at the time of Decedent's accident and that there was only one handrail. (Rec. Doc. 122-3 at 6, Ex. 1 at p. 18 lines 21-25 and p. 19 lines 1-10). Carter further testified that he was instructed by the vessel's captain to put nonskid on the stairs after Decedent's accident. *Id*. at p. 7, 8-9; Ex. 1 pp. 20-21, 22, 28, 29. Carter also described the stairwell steps as being insufficiently deep to safely place a foot while descending and stated that people slip "all the time" on that stairway. *Id*. at 33-34. Captain John C. Manders, Plaintiff's expert, examined the M/V Dixie Patriot on February 4, 2008, and

---

[2]It appears that Plaintiff may not be alleging that SHRM was negligent in selecting Dr. Gidman. (See Rec. Doc. 132-2 at 3). Plaintiff states, "Plaintiff is not alleging that Defendant ESS was negligent in selecting Dr. Hebert." *Id*. However, Plaintiff selected Dr. Hebert while Defendant SHRM selected Dr. Gidman.

5

reviewed the documentation regarding Decedent's injury. The expert reports of Captain Manders describe the stairway's lack of dual handrails as hazardous and indicate that the steps were "not uniform in riser height and tread depth" and may not have conformed to tread height and depth requirements. (Rec. Doc. 122-3 at 16-18, Ex. 2 at 3-5).

## DISCUSSION

**A. Summary Judgment Standard**

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56©; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, (1986). Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial. *Webb v. Cardiothoracic Surgery Assocs. of N. Texas,* 139 F.3d 532, 536 (5th Cir. 1998). The nonmovant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. *Id.* Accordingly, conclusory

rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.* 7 F.3d 1203, 1207 (5th Cir. 1993).

**B. SHRM's Motion to Dismiss**

<u>1. Employer's Duty to Provide a Reasonably Safe Place to Work</u>

A Jones Act employer is to provide its employees with a reasonably safe place to work. *Colburn v. Bunge Towing, Inc.*, 883 F.2d 372, 374 (5th Cir. 1989). The duty of care owed by an employer under the Jones Act is that of ordinary prudence, namely, the duty to take reasonable care. *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 338-39 (5th Cir. 1997). Such negligence may arise through the employer's failure to inspect the vessel for hazards and failure to take reasonable precautions to protect a seaman from defects. *Davis v. Hill Engineering, Inc.*, 549 F.2d 314, 329 (5th Cir. 1977), *overruled on other grounds by Gautreaux*, 107 F.3d at 339. Lack of knowledge is a sufficient defense only when the employer has exercised due care under the circumstances. *Turner v. Inland Tugs Co.*, 689 F. Supp. 612, 619 (5th Cir. 1988). In other words, "the standard of care is not what the employer subjectively knew, but rather what it objectively knew or should have known." *Id*.

Inspection of the vessel is of particular import when the vessel belongs to a third party:

Although an employee may be on another's property for

> only a short time, and although the employer may have no
> supervision over the property, there is no de minimus
> rule. The "brevity of the sojourn" is irrelevant with
> respect to the duty to provide a safe place to work . .
> . . The employer may protect itself by simply refusing to
> permit its employees from going on the property. . . .

*Davis*, 549 F.2d at 329(*quoting Nivens v. St. Louis Southwestern Railway Co.*, 425 F.2d 114, 118-19 (5th Cir. 1970)). *See also Turner,* 689 F.Supp. at 619 (upholding the jury's finding of liability under the Jones Act and noting that "[t]he jury obviously believed that Inland Tugs failed to provide plaintiff with a safe place to work and could have inspected the barges prior to having its crew work on them").

While SHRM may not have had a duty to repair the allegedly dangerous stairway[3] nor a duty to warn employees of dangers of which it was not aware, SHRM did have a duty to exercise reasonable care. Such reasonable care included a duty to inspect the vessel upon which its employees would be working. Neither Plaintiff nor SHRM has presented evidence regarding whether such an inspection occurred. While SHRM alleges that Decedent, as the highest ranking SHRM employee onboard the vessel, would have been the person responsible for reporting a dangerous condition, SHRM does not assert that Decedent was the person responsible for making a

---

[3] The application of nonskid tape appears to be a reasonable precaution SHRM could have taken to protect its seamen from defects. However, the Court declines to evaluate this issue at this time as issues of fact exist regarding whether there was in fact a defect and whether SHRM should have been aware of such defect.

8

preliminary or even routine inspections of the workplace. SHRM cannot immunize itself absolutely by delegating its duty to provide a safe workplace to an employee; comparative fault is at issue. Hence, the alleged breach of SHRM's duty to provide a safe place to work is not ripe for summary judgment.

2. Employer's Duty to Provide Prompt and Adequate Medical Care

A shipowner has a duty to provide prompt and adequate medical care to its seamen. *De Centeno v. Gulf Fleet Crews, Inc.*, 798 F.2d 138,140 (5th Cir. 1986)(*citing DeZon v. American President Lines, Ltd.*, 318 U.S. 660, 667-68 (1943)). Furthermore, a shipowner is vicariously responsible for the negligence of a physician <u>it chooses</u> to treat its seaman. *Id*. (emphasis added). *See also Carter v. Bisso Marine, Co., Inc.*, 238 F.Supp.2d 778, 791 (E.D. La. 2002)(finding that a vessel owner can breach the duty to provide adequate medical care through its direct negligence in failing to provide prompt and qualified medical treatment for injured seamen and through the vessel owner's vicarious liability for the malpractice of the doctor it chooses). However, a Jones Act employer cannot demand that an injured seaman see solely a doctor of the employer's choosing. *Turner v. Inland Tugs Co.*, 689 F.Supp. 612, 618-19 (5th Cir. 1988).

Plaintiff presents case law addressing employer reimbursement for medical expenses rather than analyzing the employer's liability based upon a failure to provide prompt and adequate medical care.

9

Plaintiff's argument that SHRM is responsible for all results that naturally and proximately flow from the shipboard accident is a general proximate cause argument rather than an allegation that SHRM specifically breached its duty to provide prompt and adequate medical care. Plaintiff has not alleged any wrongdoing or negligence on the part of SHRM regarding its choice of doctor for Decedent or the speed with which it provided medical care. Neither has Plaintiff argued that SHRM's selected doctor, Dr. Gidman, acted negligently or that SHRM failed to pay any of Decedent's medical expenses. Plaintiff's claim of medical negligence stems from the surgery performed by Dr. Hebert, the physician selected by Plaintiff, not SHRM. Hence, Plaintiff has presented no evidence to support its claim that SHRM breached its duty to provide prompt and adequate medical care.

**C. D&C's Motion for Summary Judgement**

A ship operator has a duty to provide a seaworthy vessel. *Clevenger v. Star Fish and Oyster Co.*, 325 F.2d 397, 399-400 (5thc Cir. 1963). A vessel is unseaworthy if it presents an unreasonable risk of harm to a seaman. *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539 (1960). D&C acknowledges that, pursuant to its operating agreement with the vessel owners, it was responsible for maintaining the M/V Dixie Patriot, including the maintenance and cleaning of the stairways. (Rec. Doc 121-2 at 2). D&C asserts

that the vessel was seaworthy[4] and argues that Plaintiff has neither alleged nor presented evidence of a specific unseaworthy or dangerous condition or instance of negligence that caused or contributed to Decedent's injury.

However, Plaintiff contends that the stairway was dangerous and specifically alleges that it lacked nonskid covering and proper handrails and was improperly constructed using nonuniform steps and tread. Further, Plaintiff has presented deposition and documentary evidence to support these allegations, namely the deposition testimony of seaman James Carter and the expert report of Captain John C. Manders. Seaman Carter testified that there was no nonskid tape on the stairs at the time of Decedent's fall and further stated that people frequently slipped on the stairway. The expert reports of Captain Manders indicate that the steps were "not uniform in riser height and tread depth" and may not have conformed to tread height and depth requirements. Manders' report also describes the stairway's lack of dual handrails as hazardous. Hence, genuine issues of material fact and distinct factual

---

[4]D&C presents the affidavit of Captain Lanny Malcombe. Captain Malcombe inspected the stairway after the accident and "found no evidence of any foreign substances or water on the stairs that may have made the stairs slippery or otherwise unsafe." (Rec. Doc. 121-8 at 2). Malcombe further stated, "[t]he stairs did not have any defects or damage and were in a normal, safe and seaworthy condition." *Id.* D&C also asserts that nonskid tape was on the stairway prior to the accident and cites the various United States Coast Guard and the American Bureau of Shipping inspections passed by the vessel prior to Decedent's accident. Id. at 4.

disputes[5] remain regarding the seaworthiness of the vessel and D&C's alleged negligence. Accordingly,

**IT IS ORDERED** that Defendant SHRM's Motion for Summary Judgment (Rec. Doc. 117) is **DENIED in part and GRANTED in part**. The motion is **DENIED** with respect to SHRM's duty to provide a reasonably safe place to work and **GRANTED** with respect to SHRM's duty to provide prompt and adequate medical care.

**IT IS FURTHER ORDERED** that Defendant D & C's Motion for Summary Judgment (Rec. Doc. 121) is **DENIED.**

New Orleans, Louisiana, this 20th day of March, 2009.

_____
IVAN L.R. LEMELLE
UNITED STATES DISTRICT JUDGE

---

[5] Plaintiff contends nonskid tape was not applied until after the accident, while D&C asserts that such tape was applied at least a month prior to the accident.